1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

THUNDER PROPERTIES, INC.,

         Plaintiff,

     vs.

JAMES L. WOOD et al.,

         Defendants.

3:14-cv-00068-RCJ-WGC

**ORDER**

     This case arises from a residential foreclosure by the Wingfield Springs Community Association ("Wingfield" or "HOA") for failure to pay HOA assessments. Pending before the Court are a Motion for Summary Judgment (ECF Nos. 78, 85) and a Motion to Remand (ECF No. 90). For the reasons given herein, the Court denies the Motion to Remand and grants the Motion for Summary Judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND

     On or about August 22, 1997, Defendants James and Cynthia Wood ("the Woods") acquired title to real property at 7365 Grand Island Drive, Sparks, Nevada 89436 ("the Property"). (Compl. ¶¶ 8, 13, ECF No. 1-1.) Defendant Bank of America holds first and second deeds of trust against the Property recorded in 2003 and 2006, respectively. (*Id.* at ¶¶ 16–17.) The Property is also subject to Covenants, Conditions, and Restrictions ("CC&Rs") of Wingfield, which were recorded in 1996. (*Id.* at ¶¶ 8, 19.) The Woods became delinquent in their

1    dues to the HOA, and as such the HOA caused non-party ATC Assessment Collection Group

2    ("ATC") to record one or more notices of delinquent association lien and a subsequent notice of

3    default and election to sell and notice of trustee's sale. (*Id.* at ¶¶ 21–25.) ATC sold the Property

4    at a trustee's sale to Plaintiff Thunder Properties ("Thunder") on or about August 8, 2013. (*Id.* at

5    ¶ 27.) However, Bank of America has caused Defendant National Default Servicing Corp.

6    ("NDSC") to record a notice of breach and election to sell and a notice of trustee's sale as to the

7    Property. (*Id.* at ¶¶ 48–49.)

8         Thunder sued Defendants in state court to quiet title to the Property, among other claims.

9    On January 31, 2014, Defendants removed the action to this Court on the basis of diversity

10   jurisdiction under 28 U.S.C. §§ 1332 and 1441(b). (ECF No. 1.) More than two and a half years

11   later, Thunder now moves to remand the case to state court. (ECF No. 90.) Thunder asserts that,

12   contrary to the petition for removal which alleged Thunder was a citizen of Nevada only,

13   Thunder's principal place of business has been located in California at all times relevant to the

14   question of diversity. Bank of America has also moved for summary judgment on Thunder's

15   quiet title claim. (ECF Nos. 78, 85.)

16   **II.    MOTION TO REMAND**

17        **a.  Legal Standards**

18        For diversity jurisdiction to exist, Thunder's citizenship must be diverse from the

19   citizenship of all named defendants. 28 U.S.C. § 1332(a); *see also Rouse v. Wachovia Mortg.,*

20   *FSB*, 747 F.3d 707, 709 (9th Cir. 2014) (requiring "complete diversity"). While an individual is

21   considered a citizen of his or her state of domicile, a corporation is a citizen of both its state of

22   incorporation and the state in which it has its principal place of business. *See Kantor v. Wellesley*

23   *Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *Johnson v. Columbia Properties*

24   *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citing 28 U.S.C. § 1332(c)(1)). It is now well

established that a corporation's principal place of business is its "nerve center," i.e. the state in which its officers "direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

Diversity of citizenship must exist at the time an action is commenced. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004). In addition, in the case of removal jurisdiction, diversity must also exist at the time federal-court jurisdiction is invoked. *See Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1130–31 (9th Cir. 2002); *Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014). "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it. When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 96–97.

### b.  Analysis

Here, the parties agree that Thunder is citizen of Nevada, because it is incorporated here. The parties also agree that Defendants James and Cynthia Wood are citizens of California. (Mot. Remand 3, ECF No. 90; Resp. 3, ECF No. 94.) Thunder now asserts that complete diversity does not exist because Thunder is also a citizen of California due to its principal place of business being located there. Thus the dispute centers on where Thunder maintained its principal place of business at the time the action was filed and removed in January 2014. (*See* Compl., ECF No. 1-1; Pet. Removal, ECF No. 1.) To resolve the dispute, the Court must determine where Thunder's "high-level officers" directed, controlled, and coordinated Thunder's activities in January 2014. *See Hertz*, 559 U.S. at 80.

The record before the Court indicates that Thunder has only ever had two high-level officers: Jon Jentz and Charles Schmidt. At the time of incorporation in 2012, Jentz was the sole officer and director. (Jentz Dep. 16:2–8, ECF No. 94-5.) Schmidt came on as President of

Thunder at some time prior to August 8, 2013. (*Id.* at 17:1–8.) It is undisputed that at the time of filing and removal, Jentz was Secretary, Treasurer, Director, and owner of Thunder, and Schmidt was President. (Jentz Decl. ¶¶ 1–5, ECF No. 98-1; Resp. 9, ECF No. 94; September 2013 Annual List of Officers 2, ECF No. 94-1 at 5.)

Thunder proffers the declaration of Jon Jentz, in which Jentz states that "at all points since the company was formed, [he has] made all decisions related to Thunder's business operations," and that "[v]irtually all these decisions have been made . . . from Thunder's corporate headquarters [in California]." (Jentz Decl. ¶¶ 3–4, ECF No. 98-1.) Jentz further states that Schmidt (1) "did not have any active role in the decision making related to Thunder's business"; (2) never "possessed any ownership interest in Thunder"; and (3) served merely as a "man on the ground in Nevada, carrying out more mundane and clerical tasks at [Jentz's] instruction." (*Id.* at ¶¶ 5–7.) Jentz's declaration is more or less consistent with his deposition testimony of September 22, 2015. At that time, he testified that he "made most of the business decisions of the corporation, such as hiring a property manager, buying the properties," and handling all the accounting. (Jentz Dep. 18:19–23, 20:21–25, ECF No. 94-5.) He further testified that he performed these duties from California. (*Id.* at 21:4–20.) In contrast, Jentz declares, Schmidt was "somewhat of an advisor," and performed routine business tasks like "getting cashier's checks or being on bank accounts." (*Id.* at 21:4–10.)

In response, Bank of America argues, among other things, that (1) Thunder is not registered with the California Secretary of State; (2) Thunder is not and has not been paying franchise tax in California; and (3) the Nevada Secretary of State's records show that Thunder's corporate address is and always has been in Nevada. The fact that Thunder's administrative filings in Nevada (and lack thereof in California) indicate on their face a corporate address in Nevada is not, by itself, dispositive of the principal place of business inquiry. *See, e.g.*, *Hertz*,

559 U.S. at 97 (rejecting the suggestion that a mere administrative filing, such as SEC Form 10–K, "listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"). However, Bank of America has provided more than a bare allegation of the location of Thunder's principal corporate offices. It is undisputed that Charles Schmidt was Thunder's President and was residing in Nevada at the time of filing and removal. At the very least, Schmidt acted as an advisor to Jentz, was a "man on the ground" in Nevada, and handled various important aspects of the business, including tasks related to managing payments and corporate bank accounts. The Court is satisfied that the evidence of Schmidt's involvement in the business, in addition to the Nevada administrative filings, is sufficient to permit the conclusion that Thunder's principal place of business was in Nevada at all times relevant to the question of diversity of citizenship.

Therefore, the Court denies the motion to remand.

### III.   MOTION FOR SUMMARY JUDGMENT

#### a.   Legal Standards

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely

colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Notably, facts are only viewed in the light most favorable to the non-moving party where there is

a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even

where the underlying claim contains a reasonableness test, where a party's evidence is so clearly

contradicted by the record as a whole that no reasonable jury could believe it, "a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### b. Analysis

On November 4, 2016, the Ninth Circuit Court of Appeals denied a petition for en banc

rehearing in *Bourne Valley Ct. Tr. v. Wells Fargo Bank, N.A.*, No. 15-15233 (9th Cir. Nov. 4,

2016.). In *Bourne Valley*, the Court of Appeals ruled that the opt-in notice scheme of Chapter

116 is facially unconstitutional under the Due Process Clause of the Fourteenth Amendment.

That ruling is enough to settle Thunder's quiet title claim in favor of Bank of America as a

matter of law with respect to the HOA's foreclosure. The HOA's foreclosure did not extinguish

Bank of America's DOT against the Property.

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 90) is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF Nos. 78, 85)

is GRANTED. Thunder purchased the Property subject to Bank of America's first deed of trust.

The Clerk of the Court shall enter judgment in favor of Bank of America and close the case.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge
February 28, 2017